IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2007 FEB 13  PM 3:09

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

JANE DOE, Individually and as Next Friend of
JULIE DOE, a minor,
                         Plaintiffs,

-vs-                                                    Case No. A-06-CA-983-SS

MYSPACE, INC., and NEWS CORPORATION,
                         Defendants.

## ORDER

BE IT REMEMBERED on the 1st day of February 2007, the Court held a hearing in the above-styled cause, to consider Defendants MySpace, Inc. and News Corporation's ("MySpace")[1] Motion to Dismiss [#6, 7, 15, 16, 36], Plaintiffs' responses thereto [#13, 14, 38], and Defendants' reply thereto [#20]. Having considered the motion, the responses, the replies, the arguments of counsel at the hearing, the relevant case law, and the case file as a whole, the Court now enters the following opinion and orders.

### Background

MySpace.com is the most visited web site in the United States, and it is owned by Defendant MySpace, Inc.[2] MySpace.com is a "social networking web site" that allows its members to create online "profiles," which are individual web pages on which members post photographs, videos, and

---

[1] News Corporation, the parent company of MySpace, Inc., asserts the same motion to dismiss and adopts the arguments and reasoning presented by MySpace, Inc.; therefore, for purposes of this Order, a reference to MySpace and its arguments is actually a reference to both MySpace, Inc. and News Corporation.

[2] Defendant MySpace, Inc. is wholly owned by Fox Interactive Media, Inc., a subsidiary of Defendant News Corporation.

information about their lives and interests. The idea of online social networking is that members will use their online profiles to become part of an online community of people with common interests. Once a member has created a profile, she can extend "friend invitations" to other members and communicate with her friends over the MySpace.com platform via e-mail, instant messaging, or blogs.

MySpace.com is free to users who agree to the MySpace Terms of Use Agreement. Every new member of MySpace.com, including Julie Doe, agrees to be bound by the MySpace.com Terms of Service, by clicking a check box on the website. MySpace's Terms of Service provide that MySpace cannot verify the age or identity of MySpace.com members and cautions members not to provide "telephone numbers, street addresses, last names, URLs or email addresses" to other members.

According to Plaintiffs' Verified Complaint, Julie Doe created a MySpace profile when she was 13 years old. At the hearing, Plaintiffs' counsel admitted that Julie Doe lied about her age and represented that she was 18 years old when she joined MySpace.com.[3] Plaintiffs allege Pete Solis, a nineteen-year-old, initiated contact with Julie Doe, then fourteen years old, through MySpace.com on April 6, 2006. Subsequently, Julie Doe provided Pete Solis with her telephone number and the two communicated over the phone for several weeks. At some point, Julie Doe and Pete Solis arranged to meet for a date on May 12, 2006. Plaintiffs allege that during that meeting Pete Solis sexually assaulted Julie Doe. On May 13, 2006, Jane Doe, Julie's mother, called the Austin Police Department to report the sexual assault of her daughter. Pete Solis was subsequently arrested and indicted by the Travis County District Attorney's Office for Sexual Assault, a second degree felony.

---

[3] MySpace.com requires that a user be at least fourteen years old to use their services.

This case was filed in Bronx County, New York, on September 26, 2006, and subsequently removed to the United States District Court for the Southern District of New York on September 29, 2006. The Honorable Miriam Goldman Cedarbaum of the United States District Court for the Southern District of New York transferred the case to this Court, pursuant to 28 U.S.C. § 1404(a), on December 1, 2006. Plaintiffs' Verified Complaint, the live pleading in this case filed in Bronx County, New York, asserts the following causes of action against Defendants: negligence, gross negligence, fraud, and negligent misrepresentation.

## I.   Defendants' Motion to Dismiss

MySpace moves to dismiss this case with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) and 9(b). Defendants assert they are immune from this suit under the Communications Decency Act of 1996. Defendants also assert Plaintiffs' negligence claims fail under the common law and Plaintiffs' fraud and negligent misrepresentation claims do not satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b).

### A.   Communications Decency Act of 1996

The Communications Decency Act of 1996, 47 U.S.C. § 230 (the "CDA" or the "Act"), states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Neither party contests that MySpace is an "interactive computer service" as defined by the CDA, and it is clear that MySpace meets the statutory definition of such a service. *See* 47 U.S.C. § 230(f)(2). The term "information content provider" means "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). It is also clear that both

Julie Doe and Pete Solis qualify as "information content providers" with respect to their communications through MySpace.

> In crafting Section 230, Congress made the following findings:
>
> (1) The rapidly developing array of Internet and other interactive computer services available to individual Americans represent an extraordinary advance in the availability of educational and informational resources to our citizens.
>
> (2) These services offer users a great degree of control over the information that they receive, as well as the potential for even greater control in the future as technology develops.
>
> (3) The Internet and other interactive computer services offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity.
>
> (4) The Internet and other interactive computer services have flourished, to the benefit of all Americans, with a minimum of government regulation.
>
> (5) Increasingly Americans are relying on interactive media for a variety of political, educational, cultural, and entertainment services.

47 U.S.C. § 230(a).

The policy underlying the CDA is the promotion of "the continued development of the Internet and other interactive computer services . . . ." 47 U.S.C. § 230(b)(1). To ensure that web site operators and other interactive computer services would not be crippled by lawsuits arising out of third-party communications, the Act provides interactive computer services with immunity. *See Dimeo v. Max*, 433 F. Supp. 2d 523, 528 (E.D. Pa. 2006) ("The provision 'precludes courts from entertaining claims that would place a computer service provider in a publisher's role,' and therefore bars 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions– such as deciding whether to publish, withdraw, postpone, or alter content.'") (quoting *Green v. America Online*, 318 F.3d 465, 471 (3d Cir. 2003); *Zeran v. America Online, Inc.*,

-4-

129 F.3d 327, 330 (4th Cir. 1997)). The CDA thus encourages web sites and other "interactive computer services" to create forums for people to exchange their thoughts and ideas by protecting web sites and interactive computer services from potential liability for each message republished by their services. *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122–24 (9th Cir. 2003); *Zeran*, 129 F.3d at 330–31.

Several courts have construed the CDA to date. In *Carafano*, a case involving false online personal ad listings, which led to Christine Carafano's receipt of sexually explicit phone calls, letters, and hand-delivered notes, the Ninth Circuit Court of Appeals held that the CDA granted the interactive service provider Matchmaker.com full immunity where a third party willingly provided the essential published content. 339 F.3d at 1124. The Ninth Circuit explained the policy underlying the CDA as follows:

> The specter of tort liability in an area of such prolific speech would have an obvious chilling effect. It would be impossible for service providers to screen each of their millions of postings for possible problems. Faced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted. Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect.

*Id.* at 1124 (quoting *Zeran*, 129 F.3d at 330–31).

One of the most important and oft-cited cases to date is *Zeran v. America Online, Inc.* In *Zeran*, the victim of a vicious prank sued America Online, Inc. ("AOL") for failing to remove a false advertisement offering t-shirts featuring tasteless slogans related to the 1995 Oklahoma City bombing and instructing interested buyers to call the plaintiff to place an order. 129 F.3d at 329. After receiving death threats from people who were outraged by the ad, Zeran learned of the prank and demanded that AOL remove the ad from its bulletin board and post a retraction. *Id.* AOL failed

to remove the original ad, and the unidentified poster also posted several more ads listing the plaintiff's phone number. *Id.* A local radio station learned of the ads and encouraged its listeners to harass Zeran. *Id.* The volume and intensity of the threats became so severe that local police guarded Zeran's home to protect his safety. *Id.*

Zeran sued AOL for negligence because it failed to remove the ad after specific notice of its falsity and allowed the third party to post additional ads after Zeran had put AOL on notice of his harassment and bodily danger. The Fourth Circuit affirmed the dismissal of the claims on the pleadings, explaining that the CDA necessarily protects interactive computer services from liability even after they are notified of an allegedly defamatory or threatening post because the insupportable legal burden imposed by potential tort liability would undermine the CDA's goal of promoting speech on the Internet. *Id.* at 330. The Court explained that "[b]y its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Id.* In enacting the CDA, "Congress made a policy choice . . . not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages." *Id.* at 330–31.

Despite Plaintiffs' arguments to the contrary, the Court finds *Zeran* and its rationale to be applicable to the case at hand. Here, Plaintiffs seek to impose tort liability on MySpace, a company that functions as an intermediary by providing a forum for the exchange of information between third party users. Plaintiffs' allegations that MySpace knew sexual predators were using the service to communicate with minors and failed to react appropriately can be analogized to Zeran's claims that

AOL failed to act quickly enough to remove the ads and to prevent the posting of additional ads after AOL was on notice that the content was false.

Plaintiffs contend the CDA is inapplicable to their claims, so Defendants should not be granted immunity under the CDA. Plaintiffs assert Section 230(c)(1) is inapplicable here because Plaintiffs have not sued MySpace for the publication of third-party content but rather for failing to implement basic safety measures to prevent sexual predators from communicating with minors on MySpace. Plaintiffs attempt to distinguish *Carafano*, *Zeran*, and *Prickett v. Info USA, Inc.*, No. 4:05-CV-10, 2006 WL 887431 (E.D. Tex. Mar. 30, 2006), from the case at hand, by pointing out that each of these cases was based on the listing of third-party content without taking into account its defamatory or inaccurate nature. Plaintiffs assert their case is not based on MySpace's posting of third-party content, but rather on MySpace's failure to institute safety measures to protect minors.

Plaintiffs seek to limit CDA immunity to cases involving defamation or related actions and assert that their claims against MySpace have nothing to do with the content of the information provided. Plaintiffs contend that neither the plain language of the CDA nor the cases interpreting it contemplate the extension of the CDA's immunity provision to MySpace in this case.

Nothing on the face of the statute supports Plaintiffs' narrow interpretation that the CDA's immunity applies only to cases involving defamation and defamation-related claims. 47 U.S.C. § 230. The Eastern District of Texas recently addressed the application of CDA immunity in a case involving claims of negligence, negligence per se, intentional infliction of emotional distress, invasion of privacy, civil conspiracy, and distribution of child pornography. *Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 WL 3813758 (E.D. Tex. Dec. 27, 2006). This case dealt with a lawsuit against Yahoo! Inc., which arose from an e-group hosted by Yahoo! on which illegal child

pornography pictures were posted by a third party. Among the photos were sexually explicit photos of Johnny Doe, a minor. The district court determined that Section 230(c)(1) applied to immunize Yahoo! because Plaintiffs' claims sought to treat Defendant as the "publisher or speaker" of the third-party content (the photos). *Id* at * 2–4. It is important to note that in *Bates*, as here, the Plaintiffs did not allege that there was anything defamatory or inaccurate about the posted content,[4] but the court still applied the CDA to immunize Yahoo! from suit.

Defendants have presented numerous cases in which the CDA has been applied to bar non-defamation claims. *See, e.g., Ben Ezra, Weinstein & Co. v. America Online, Inc.*, 206 F.3d 980, 986 (10th Cir. 2000) (negligence claim); *Zeran*, 129 F.3d at 330 (negligence claims); *Bates*, 2006 WL 3813758 at *5 (negligence, negligence per se, intentional infliction of emotional distress, invasion of privacy, civil conspiracy and distribution of child pornography); *Beyond Sys., Inc. v. Keynetics, Inc.*, 422 F. Supp. 2d 523, 536 (D. Md. 2006) (claim under Maryland Commercial Electronic Mail Act); *Barnes v. Yahoo!, Inc.*, No. Civ. 05-926-AA, 2005 WL 3005602, at *4 (D. Or. Nov. 8, 2005) (negligence claim resulting in personal injury). All of these cases involved attempts to hold an interactive computer service liable for its publication of third-party content or harms flowing from the dissemination of that content.

Plaintiffs argue the CDA does not bar their claims against MySpace because their claims are not directed toward MySpace in its capacity as a publisher. Plaintiffs argue this suit is based on MySpace's negligent failure to take reasonable safety measures to keep young children off of its site and not based on MySpace's editorial acts. The Court, however, finds this artful pleading to be

---

[4] Rather, the Plaintiffs in *Bates* alleged Yahoo! knowingly hosted illegal child pornography on its e-group and that Yahoo! should have prevented, removed, and/or blocked the illegal child pornography from its website. *Id.* at *20.

disingenuous. It is quite obvious the underlying basis of Plaintiffs' claims is that, through postings on MySpace, Pete Solis and Julie Doe met and exchanged personal information which eventually led to an in-person meeting and the sexual assault of Julie Doe. If MySpace had not published communications between Julie Doe and Solis, including personal contact information, Plaintiffs assert they never would have met and the sexual assault never would have occurred. No matter how artfully Plaintiffs seek to plead their claims, the Court views Plaintiffs' claims as directed toward MySpace in its publishing, editorial, and/or screening capacities. Therefore, in accordance with the cases cited above, Defendants are entitled to immunity under the CDA, and the Court dismisses Plaintiffs' negligence and gross negligence claims with prejudice under rule 12(c) of the Federal Rules of Civil Procedure.[5]

i.   **Self-Regulation**

In addition to the protection afforded to interactive computer services in their publishing capacity, the CDA also immunizes such services from liability based on efforts to self-regulate material. Specifically, "[n]o provider or user of an interactive computer service shall be held liable on account of— (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable . . . ." 47 U.S.C. § 230(c)(2)(A). This section reflects Congress's recognition that the potential for liability attendant to implementing safety features and policies created a disincentive for interactive computer services to implement any safety features or policies at all. To the extent Plaintiffs seek to hold MySpace liable for ineffective security measures

---

[5] Although Defendants moved to dismiss Plaintiffs' claims based on Federal Rule of Civil Procedure 12(b)(6), the Court may construe such a motion to a motion for judgment on the pleadings under Rule 12(c). *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

and/or policies relating to age verification,[6] the Court alternately finds such claims are barred under § 230(c)(2)(A).

### B. Duty to Protect under Texas Law

Under Texas Law, to state a claim for negligence or gross negligence, Plaintiffs must allege the existence of a duty, a breach of that duty, and damages proximately caused by the breach. *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). Defendants assert Plaintiffs have failed to state a claim for negligence or gross negligence because MySpace had no legal duty "to institute and enforce" security measures that would substantially decrease the likelihood that Julie Doe would be sexually assaulted. "The existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question. As a general rule, a person has no legal duty to protect another from the criminal acts of a third person or control the conduct of another." *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996) (internal citations omitted); *accord Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990) ("Generally, there is no duty to control the conduct of third persons.").

The general rule of course has exceptions, such as when a special relationship exists between the actor and the third person, which special relationship imposes a duty upon the actor to control the third person's conduct. *Phillips*, 801 S.W.2d at 525. These special relationships include the relationship between: (1) employer and employee; (2) parent and child; and (3) independent contractor and contractee under special circumstances. *Id.* Plaintiffs have alleged no such special relationship between MySpace and either Pete Solis or Julie Doe. Here the alleged sexual assault

---

[6] The Court finds Plaintiffs' claims particularly unwarranted here given that Julie Doe lied about her actual age to bypass the age requirement and then violated MySpace's express rules by giving out her personal information.

happened offline, after telephone conversations offline, and there is no allegation MySpace was in control of the premises where the crime occurred.[7] Defendants assert Plaintiffs have failed to state a claim for negligence or gross negligence because MySpace had no legal duty to prevent the alleged sexual assault.

Plaintiffs respond that MySpace had a duty to institute reasonable safety measures to protect minors from sexual predators because it was foreseeable that minors such as Julie Doe could be injured by the criminal acts of adult MySpace users. *Walker*, 924 S.W.2d at 377 (stating that premises owners have a duty to protect persons injured by the criminal acts of third parties on their premises if the criminal acts were foreseeable). "Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable." *Id.* (citing *Lofton v. Texas Brine Corp.*, 777 S.W.2d 384, 387 (Tex. 1989)). Plaintiffs also cite *Rodriquez v. Moerbe*, 963 S.W.2d 808, 817 (Tex. App.–San Antonio 1998, no pet.), as recognizing the exception to the no duty rule for a third party's criminal conduct that is the foreseeable result of the defendant's negligence. Plaintiffs allege MySpace was on notice of several previous sexual assaults perpetrated by MySpace users against minor members; therefore, Julie Doe's sexual assault was the foreseeable result of MySpace's negligent failure to take appropriate safety measures. Plaintiffs assert MySpace had a duty to institute reasonable safety measures to prevent contact between sexual predators and minors on its website.

However, the Court is unconvinced that any exception to the general no duty rule applies to MySpace here. Plaintiffs allege MySpace can be liable under a negligence standard when a minor

---

[7] At the hearing counsel stated that the alleged sexual assault occurred in a parking lot in Travis County, Texas.

is harmed after wrongfully stating her age, communicating with an adult, and publishing her personal information. To impose a duty under these circumstances for MySpace to confirm or determine the age of each applicant, with liability resulting from negligence in performing or not performing that duty, would of course stop MySpace's business in its tracks and close this avenue of communication, which Congress in its wisdom has decided to protect.[8] The Court declines to extend premises liability cases to the internet context particularly where, as here, the Defendant provides its service to users for free. Plaintiff has cited no case law indicating that the duty of a premises owner should extend to a website as a "virtual premises." Although it is not controlling here, the Court finds the Seventh Circuit's analysis of a similar case instructive.

> Plaintiffs do not cite any case in any jurisdiction holding that a service provider must take reasonable care to prevent injury to third parties. Consider the Postal Service or Federal Express, which sell transportation services that could be used to carry harmful articles. As far as we can discover, no court has held such a carrier liable for failure to detect and remove harmful items from shipments. . . . Similarly, telephone companies are free to sell phone lines to entities . . . , without endeavoring to find out what use the customers make of the service. . . .
>
> Yet an ISP, like a phone company, sells a communications service; it enabled [the user] to post a web site and conduct whatever business [the user] chose. . . . Landlord, phone company, delivery service, and web host all could learn, at some cost, what [the user] was doing with the services and who was potentially injured as a result; but state law does not require these providers to learn, or to act as Good Samaritans if they do. The common law rarely requires people to protect strangers, or for that matter acquaintances or employees. States have enacted statutes to change that norm in some respects; Dram Shop laws are good examples. Plaintiffs do not identify anything along those lines concerning web hosts. . . .

*Doe v. GTE Corp.*, 347 F.3d 655, 661 (7th Cir. 2003) (affirming district court's dismissal of claims against internet services and web hosting services for hosting images of athletes who were

---

[8] To date, MySpace has more than 100 million registered users worldwide, and it is the most visited website in the United States, as previously noted.

-12-

unknowingly recorded unclothed in a locker room because web hosting services have no duty to investigate their clients' activities or to prevent potential injury that results therefrom).

Accordingly, the Court finds Plaintiffs have failed to state a claim for negligence or gross negligence because MySpace had no duty to protect Julie Doe from Pete Solis's criminal acts nor to institute reasonable safety measures on its website. If anyone had a duty to protect Julie Doe, it was her parents, not MySpace.[9]

### C.  Fraud and Misrepresentation

Defendants move to dismiss Plaintiffs' fraud and negligent misrepresentation claims for failure to state a claim on which relief may be granted because they do not meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). "At a minimum, Rule 9(b) requires allegations of the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992).

The Court agrees with Defendants that Plaintiffs have not plead their fraud and misrepresentation claims with sufficient particularity. Plaintiffs counsel also admitted in open court that Plaintiffs no longer wish to pursue their claims of fraud and misrepresentation because the real basis of their case is negligence. Accordingly, the Court dismisses Plaintiffs claims of fraud and negligent misrepresentation without prejudice pursuant to Federal Rule of Civil Procedure 9(b).

---

[9] Having already determined that dismissal is proper on the foregoing bases, the Court need not reach the question of whether or not Plaintiffs' negligence and gross negligence claims should be dismissed based on a lack of proximate causation under the doctrine of "new and independent cause."

## Conclusion

In accordance with the foregoing:

IT IS ORDERED that Defendants MySpace, Inc. and News Corporation's Motion to Dismiss [#6, 7, 16, 36] is GRANTED; and

IT IS FURTHER ORDERED that Plaintiffs' claims of negligence and gross negligence are DISMISSED WITH PREJUDICE and Plaintiffs' claims of fraud and negligent misrepresentation are DISMISSED WITHOUT PREJUDICE.

SIGNED this the 13th day of February 2007.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE